IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DEVELOPMENT         )
GROUP II, L.P., a Limited      )
Partnership, by SOUTH          )
PITTSBURGH MANAGEMENT II, LLC, )
its General Partner; and       )
PITTSBURGH PALISADES LLC,      )
                               )
        Plaintiffs,            )
                               )
              v.               )    Civil Action No. 04-1258
                               )
COMMONWEALTH OF PENNSYLVANIA;  )
EDWARD G. RENDELL, Governor    )
of the Commonwealth of         )
Pennsylvania; ROBERT C.        )
JUBELIRER, President Pro       )
Tempore and Trustee ad litem   )
of the Senate of the           )
Commonwealth of Pennsylvania;  )
JOHN M. PERZEL, Speaker and    )
Trustee ad litem of the House  )
of Representatives of the      )
Commonwealth of Pennsylvania;  )
and THE PENNSYLVANIA GAMING    )
CONTROL BOARD,                 )
                               )
        Defendants.            )

M E M O R A N D U M

Gary L. Lancaster,
District Judge.                              July 22, 2005

This is an action challenging the constitutionality of the Pennsylvania Race Horse Development and Gaming Act ("the Act"), 4 Pa. C.S.A. § 1101 et seq. Plaintiffs allege that the Act contains several unconstitutional provisions specifically designed to exclude plaintiffs from participation in the gaming industry. Although the Act provides for the distribution of

fourteen licenses to operate slot machine facilities within the Commonwealth of Pennsylvania, plaintiffs claim that the Act contains language that was included solely to preclude plaintiffs from applying for and receiving one of those licenses.

Before the court are motions to dismiss filed by defendants Governor Edward G. Rendell, Senator Robert C. Jubelirer, President Pro Tempore and Trustee ad litem of the Senate of Pennsylvania, and Representative John M. Perzel, Speaker and Trustee ad litem of the House of Representatives of Pennsylvania. For the reasons that follow, the motions will be granted.

I.   BACKGROUND

Unless otherwise noted, the following facts are not in dispute.

Plaintiffs allege that, for a number of months prior to the Pennsylvania Legislature's passage of House Bill No. 2330 ("the Act," codified at 4 Pa. C.S.A. § 1101, et seq.), they had made publicly known their intention to develop a commercial, residential, thoroughbred horse racing and gaming facility to contain slot machines in the City of Pittsburgh. They have since acquired property within the city limits on which they intend to build and operate such a facility. Plaintiffs have an application for a thoroughbred racing license currently pending with the State Horse Racing Commission. To legally operate their

planned facility, plaintiffs are required to secure a gaming license pursuant to the Act.

The Act provides for the issuance of fourteen (14) slot machine licenses, to meet the following requirements:

1)  no more than seven (7) Category I licenses at licensed racetrack facilities;

2)  no more than five (5) Category II licenses at slots-only parlors; and

3)  no more than two (2) Category III licenses at resort hotels.

Plaintiffs plan to seek a Category I license.

At C.S.A. 4 §§ 1302 and 1308, the Act specifies a number of conditions which must be met before a party is eligible to apply for a slot machine license. Plaintiffs contend that these eligibility requirements were not enacted with the legitimate intent of permitting only qualified and ethical entities an opportunity to obtain gaming licenses. Rather, plaintiffs assert, the requirements are merely pretextual provisions aimed at preventing plaintiffs and plaintiffs only from obtaining a license to operate the facility they plan to build.

Plaintiffs take issue with three provisions of the Act. First, they claim that § 1302(b), the provision requiring that "racinos," (facilities operating both a horse racetrack and slot machines) be further than twenty (20) linear miles from one another is unconstitutional as applied to plaintiffs. They base

this claim on the fact that the property they purchased to develop a racino is apparently less than twenty linear miles from The Meadows, an existing racetrack in Washington, PA. Plaintiffs contend that the owners of The Meadows are eligible for, and will most likely receive, one of the seven racino licenses provided for by the Act. If and when that occurs, plaintiffs argue, plaintiffs will then be prohibited from obtaining a license.

Second, plaintiffs contend that § 1308(c) of the Act is unconstitutional as applied to them. That section reads:

> [n]otwithstanding any law to the contrary, the board and the commissions shall not consider any application for a license if the applicant or any person affiliated with or directly related to the applicant is a party in any ongoing civil proceeding in which the party is seeking to overturn or otherwise challenge a decision or order of the board of commissions, pertaining to the approval, denial, or conditioning of a license to conduct thoroughbred or harness horse race meetings respectively with pari-mutual wagering, or to operate slot machines.

4 Pa. C.S.A. § 1308(c). Plaintiffs claim that they are the only plaintiffs challenging the State Horse Racing Commission's grant of a thoroughbred racing license.

Third, plaintiffs allege that the status requirements in the Act are unconstitutional as applied to plaintiffs. The Act states that current owners and operators of both thoroughbred and harness horse racing facilities and previously approved applicants for both types of horse racing facilities are eligible to apply for a racino license. 4 Pa. C.S.A. § 1302(a). However, the only new applicants who may receive a racino license are

4

those applying for a harness racing facility, not a thoroughbred racing facility. Id. Plaintiffs are current applicants for a thoroughbred racing license, and argue that the Act unconstitutionally prohibits them from receiving the license.

Plaintiffs argue that these three provisions of the Act apply only to a small class of entities, mainly Plaintiffs, and as such violate the Equal Protection Clause of the United States Constitution, the United States Constitution's prohibition against Bills of Attainder, and the Pennsylvania Constitution's prohibition against Special Legislation. Plaintiffs seek injunctive relief.

II. STANDARD OF REVIEW

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiffs will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiffs, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). In this regard, the court will not dismiss a claim merely because plaintiffs' factual allegations do not support the particular legal theory they advance. Rather, the court is under a duty to examine the complaint to determine if

the factual allegations set forth could provide relief under any viable legal theory. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990). It is on this standard that the court has reviewed defendant's motion.

III. DISCUSSION

Defendants Rendell, Jubelirer, and Perzel argue that they should be dismissed because they are immune to suit. Despite plaintiffs' assertions to the contrary, we find that legislative immunity applies here and therefore grant the motions to dismiss on that basis. Furthermore, we find that, with regard to these particular defendants, plaintiffs fail to state a claim under which relief can be granted.

The Supreme Court has repeatedly held that state and regional legislators are entitled to full immunity from liability for their legislative activities. See Bogan v. Scott-Harris, 523 U.S. 44 (1998); Tenney v. Brandhove, 341 U.S. 367 (1951); see also Lake County Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391 (1979). The roots of legislative immunity are grounded in the principle that "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Bogan, 523 U.S. at 52, citing Spallone v. U.S., 493 U.S. 265, 279 (1990). In other words, it allows

legislators the freedom "to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." Powell v. McCormack, 395 U.S. 486, 503 (1969).

Although legislative immunity isn't a universal bar to liability, it protects "...acts generally done in the course of the process of enacting legislation..." Gov't of the Virgin Islands v. Lee, 775 F.2d 514, 520 (3d. Cir. 1985), citing U.S. v. Brewster, 408 U.S. 501, 514 (1972). Here, plaintiffs name Senator Jubelirer as a defendant because he was the President Pro Tempore of the Pennsylvania Senate at the time the allegedly unconstitutional legislation in question was passed. Thus, any role he had regarding the passage of the legislation was undertaken "in the course of the process of enacting legislation." As such, he is clearly immune from liability. Accordingly, his motion to dismiss will be granted.

Similarly, Representative Perzel also argues that he should be dismissed as a defendant because he is immune to suit. Here, plaintiffs name Representative Perzel as a defendant because he was the Speaker of the House of Representatives of the Commonwealth of Pennsylvania at the time the allegedly unconstitutional legislation in question was passed. Thus, any role Representative Perzel had regarding the passage of the legislation was undertaken "in the course of the process of

enacting legislation." As such, he is clearly immune from liability. Accordingly, his motion to dismiss will be granted as well.

Finally, Governor Rendell also argues that his motion to dismiss because he is immune to suit. Plaintiffs name Governor Rendell as a defendant because he signed the legislation and received, by virtue of the legislation, the right to appoint members to the newly created Pennsylvania Gaming Control Board. When acting with respect to matters presented by the legislature, a governor acts as a legislator rather than as an executive. Thus, any role Governor Rendell had with regard to this legislation was also undertaken "in the course of the process of enacting legislation." Like Senator Jubelirer and Representative Perzel, therefore, Governor Rendell is also immune from suit.

Furthermore, we note that plaintiffs have failed to state a claim against these three defendants under which the court could grant relief. The legislation has been passed and signed, and the Pennsylvania Gaming Control Board has been selected and is now operational. The court is unclear on what cause of action plaintiffs attempt to assert against Governor Rendell, Senator Jubelirer, and Representative Perzel. Plaintiffs seek injunctive relief, but each of these defendants has completed his respective role with regard to the Act, and as such, prospective injunctive relief is not a possibility in this

case.

IV.  CONCLUSION

For the foregoing reasons, the motions to dismiss filed by defendants Governor Edward G. Rendell, Senator Robert C. Jubelirer, and Speaker of the House John M. Perzel are GRANTED. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PITTSBURGH DEVELOPMENT GROUP II, L.P., a Limited Partnership, by SOUTH PITTSBURGH MANAGEMENT II, LLC, its General Partner; and PITTSBURGH PALISADES LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>COMMONWEALTH OF PENNSYLVANIA; EDWARD G. RENDELL, Governor of the Commonwealth of Pennsylvania; ROBERT C. JUBELIRER, President Pro Tempore and Trustee ad litem of the Senate of the Commonwealth of Pennsylvania; JOHN M. PERZEL, Speaker and Trustee ad litem of the House of Representatives of the Commonwealth of Pennsylvania; and THE PENNSYLVANIA GAMING CONTROL BOARD,<br><br>    Defendants. | Civil Action No. 04-1258 |

O R D E R

AND NOW, this 22 day of July, 2005, upon consideration of defendant Edward G. Rendell's motion to dismiss [document #12], Senator C. Jubelirer's motion to dismiss [document #10], and Representative John M. Perzel's motion to dismiss [document # 21], IT IS HEREBY ORDERED that said motions are granted.

BY THE COURT:

_____, J.

cc: All counsel of record