IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DEVELOPMENT          )
GROUP II, L.P., a Limited       )
Partnership, by SOUTH           )
PITTSBURGH MANAGEMENT II, LLC,  )
its General Partner; and        )
PITTSBURGH PALISADES LLC,       )
                                )
        Plaintiffs,             )
                                )
            v.                  )     Civil Action No. 04-1258
                                )
COMMONWEALTH OF PENNSYLVANIA;   )
EDWARD G. RENDELL, Governor     )
of the Commonwealth of          )
Pennsylvania; ROBERT C.         )
JUBELIRER, President Pro        )
Tempore and Trustee ad litem    )
of the Senate of the            )
Commonwealth of Pennsylvania;   )
JOHN M. PERZEL, Speaker and     )
Trustee ad litem of the House   )
of Representatives of the       )
Commonwealth of Pennsylvania;   )
and THE PENNSYLVANIA GAMING     )
CONTROL BOARD,                  )
                                )
        Defendants.             )

M E M O R A N D U M

Gary L. Lancaster,
District Judge.                              July **27**, 2005

        This is an action challenging the constitutionality of the
Pennsylvania Race Horse Development and Gaming Act ("the Act"),
4 Pa. C.S.A. § 1101 et seq.  Plaintiffs allege that the Act
contains several unconstitutional provisions specifically
designed to exclude plaintiffs from participation in the gaming
industry.  Although the Act provides for the distribution of

fourteen licenses to operate slot machine facilities within the Commonwealth of Pennsylvania, plaintiffs claim that the Act contains language that was included solely to preclude plaintiffs from applying for and receiving one of those licenses.

Before the court is defendant Commonwealth of Pennsylvania's ("Commonwealth") motion to dismiss.  For the reasons that follow, the motion will be granted.


I.    BACKGROUND

Unless otherwise noted, the following facts are not in dispute.

Plaintiffs allege that, for a number of months prior to the Pennsylvania Legislature's passage of House Bill No. 2330 ("the Act," codified at 4 Pa. C.S.A. § 1101, et seq.), they had made publicly known their intention to develop a commercial, residential, thoroughbred horse racing and gaming facility to contain slot machines in the City of Pittsburgh.  They have since acquired property within the city limits on which they intend to build and operate such a facility.  Plaintiffs have an application for a thoroughbred racing license currently pending with the State Horse Racing Commission.  To legally operate their planned facility, plaintiffs are required to secure a gaming license pursuant to the Act.

The Act provides for the issuance of fourteen (14) slot

machine licenses, to meet the following requirements:

1) no more than seven (7) Category I licenses at licensed racetrack facilities;

2) no more than five (5) Category II licenses at slots-only parlors; and

3) no more than two (2) Category III licenses at resort hotels.

Plaintiffs plan to seek a Category I license.

At C.S.A. 4 §§ 1302 and 1308, the Act specifies a number of conditions which must be met before a party is eligible to apply for a slot machine license.  Plaintiffs contend that these eligibility requirements were not enacted with the legitimate intent of permitting only qualified and ethical entities an opportunity to obtain gaming licenses.  Rather, plaintiffs assert, the requirements are merely pretextual provisions aimed at preventing plaintiffs and plaintiffs only from obtaining a license to operate the facility they plan to build.

Plaintiffs take issue with three provisions of the Act. First, they claim that § 1302(b), the provision requiring that "racinos," (facilities operating both a horse racetrack and slot machines) be further than twenty (20) linear miles from one another is unconstitutional as applied to plaintiffs.  They base this claim on the fact that the property they purchased to develop a racino is apparently less than twenty linear miles from The Meadows, an existing racetrack in Washington, PA.  Plaintiffs

3

contend that the owners of The Meadows are eligible for, and will most likely receive, one of the seven racino licenses provided for by the Act.  If and when that occurs, plaintiffs argue, plaintiffs will then be prohibited from obtaining a license.

Second, plaintiffs contend that § 1308(c) of the Act is unconstitutional as applied to them.  That section reads:

> [n]otwithstanding any law to the contrary, the board and the commissions shall not consider any application for a license if the applicant or any person affiliated with or directly related to the applicant is a party in any ongoing civil proceeding in which the party is seeking to overturn or otherwise challenge a decision or order of the board of commissions, pertaining to the approval, denial, or conditioning of a license to conduct thoroughbred or harness horse race meetings respectively with pari-mutuel wagering, or to operate slot machines.

4 Pa. C.S.A. § 1308(c).  Plaintiffs claim that they are the only plaintiffs challenging the State Horse Racing Commission's grant of a thoroughbred racing license.

Third, plaintiffs allege that the status requirements in the Act are unconstitutional as applied to plaintiffs.  The Act states that current owners and operators of both thoroughbred and harness horse racing facilities and previously approved applicants for both types of horse racing facilities are eligible to apply for a racino license.  4 Pa. C.S.A. § 1302(a).  However, the only new applicants who may receive a racino license are those applying for a harness racing facility, not a thoroughbred racing facility.  Id.  Plaintiffs are current applicants for a thoroughbred racing license, and argue that the Act

4

unconstitutionally prohibits them from receiving the license.

Plaintiffs argue that these three provisions of the Act apply only to a small class of entities, mainly Plaintiffs, and as such violate the Equal Protection Clause of the United States Constitution, the United States Constitution's prohibition against Bills of Attainder, and the Pennsylvania Constitution's prohibition against Special Legislation. Plaintiffs seek injunctive relief.

II.  <u>STANDARD OF REVIEW</u>

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiffs will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiffs, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief.  <u>See</u> <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994).  In this regard, the court will not dismiss a claim merely because plaintiffs' factual allegations do not support the particular legal theory they advance.  Rather, the court is under a duty to examine the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory.  5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1357 (2d ed. 1990).  It is on this

5

standard that the court has reviewed defendant's motion.

III. <u>DISCUSSION</u>

The Commonwealth bases its motion to dismiss on the following.  First, the Commonwealth asserts that the Eleventh Amendment bars plaintiffs' complaint against the Commonwealth of Pennsylvania.  Second, the Commonwealth argues that plaintiffs cannot bring a direct cause of action under the United States Constitution without citing a particular civil statute.  Third, the Commonwealth asserts that plaintiffs' case is not ripe for adjudication.   Fourth, the Commonwealth proffers that there is no merit to plaintiffs' claim that House Bill No. 2330 is an unconstitutional bill of attainder.

Plaintiffs respond by asserting that the Eleventh Amendment does not shield the Commonwealth from their claims, that their direct constitutional claim against the Commonwealth is proper, that their claims are in fact ripe for adjudication, and that their bill of attainder claim properly states a cause of action.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

U.S. Const. Amend. XI.  Although the Eleventh Amendment does not explicitly bar suits against a state by that state's own citizens, its reach has extended to include such lawsuits in light of the Supreme Court's consistent rulings that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-663 (1974), citing Hans v. Louisiana, 134 U.S. 1, (1890); see Welch v. Texas Dept. of Highways and Public Transp., 483 U.S. 468, 471 (1987).

A state's ability to claim Eleventh Amendment immunity, also referred to as sovereign immunity, is limited only under three distinct circumstances.  First, a state may expressly waive its rights under the Eleventh Amendment or expressly consent to being sued, both of which would have the effect of waiving immunity.  See Clark v. Barnard, 108 U.S. 436 (1883); see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, (1999).  Second, Eleventh Amendment immunity may also be lost if Congress abrogates a state's immunity through legislation passed pursuant to the Fourteenth Amendment.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, (1996). Third, Eleventh Amendment immunity is subject to the Ex Parte Young exception.  In that case:

> the Supreme Court held that the Eleventh Amendment did not prohibit a federal court from enjoining a state attorney general from enforcing an unconstitutional state law. The theory behind Young is that a suit to halt the enforcement

7

of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct.

MCI Telecommunication Corp. v. Bell Atlantic Penn., 271 F.3d 491, 506 (3d Cir. 2001) (citing Ex Parte Young, 209 U.S. 123, 159-60 (1908)).

In the case now before the court, plaintiffs do not allege that the Commonwealth has waived its sovereign immunity, nor is there any federal legislation involved, so neither the first nor second exceptions to Eleventh Amendment immunity apply here. Rather, plaintiffs argue that, because they complain of alleged constitutional violations, the Ex Parte Young exception applies and makes Eleventh Amendment immunity applicable in this case. Plaintiffs properly cite the law relating to the Ex Parte Young exception in that Eleventh Amendment immunity doesn't apply:

> [w]hen a state officer violates federal constitutional mandates, even when carrying out state policy, he is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981) (citing Ex parte Young, 209 U.S. at 160). In that situation, a plaintiff may seek declaratory or injunctive relief, id., so long as "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md.

8

V. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citing

Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)).

Despite plaintiffs' accurate portrayal of the law

regarding the Ex parte Young exception, they miss one critical

point - for the exception to apply, the defendant must be a state

officer, not the state itself.  Plaintiffs present no case law,

nor can the court find any, standing for the proposition that the

Ex parte Young exception applies when the state itself is the

defendant.  In fact, in Ex parte Young and more recently in cases

such as the widely cited Pennhurst State School & Hosp. v.

Halderman, 465 U.S. 89, (1984), the Supreme Court has explained

the rationale behind the specific applicability of Eleventh

Amendment to individuals using the color of state authority to

justify constitutional violations:

> The act to be enforced is alleged to be unconstitutional;
> and if it be so, the use of the name of the state to enforce
> an unconstitutional act to the injury of complainants is a
> proceeding without the authority of, and one which does not
> affect, the state in its sovereign or governmental capacity.
> It is simply an illegal act upon the part of a state
> official in attempting, by the use of the name of the state,
> to enforce a legislative enactment which is void because
> unconstitutional. If the act which the state attorney
> general seeks to enforce be a violation of the Federal
> Constitution, the officer, in proceeding under such
> enactment, comes into conflict with the superior authority
> of that Constitution, and he is in that case stripped of his
> official or representative character and is subjected in his
> person to the consequences of his individual conduct. The
> state has no power to impart to him any immunity from
> responsibility to the supreme authority of the United
> States.

Ex parte Young, 209 U.S. at 159-60 (citing Ex parte Ayers, 123 U.S. 443, 507 (1887)).   Based on Ex parte Young and its progeny, we find that plaintiffs are barred from suing the Commonwealth for declaratory relief, injunctive relief, or any other sort of relief.   The Commonwealth has not waived its Eleventh Amendment immunity, federal legislation is not at issue whereby Congress has abrogated the Commonwealth's right to immunity, and the Ex parte Young exception does not apply to the Commonwealth itself as a defendant, only to individuals acting as representatives of the Commonwealth.    For these reasons, we will grant the Commonwealth's motion to dismiss based on Eleventh Amendment immunity.   Because we find that the Commonwealth is immune from suit pursuant to the Eleventh Amendment, we need not reach the merits of the alternative bases for dismissal argued by defendant.

IV.   CONCLUSION

     For the foregoing reasons, defendant Commonwealth of Pennsylvania's motion to dismiss is GRANTED.   An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DEVELOPMENT          )
GROUP II, L.P., a Limited       )
Partnership, by SOUTH           )
PITTSBURGH MANAGEMENT II, LLC,  )
its General Partner; and        )
PITTSBURGH PALISADES LLC,       )
                                )
        Plaintiffs,             )
                                )
              v.                )       Civil Action No. 04-1258
                                )
COMMONWEALTH OF PENNSYLVANIA;   )
EDWARD G. RENDELL, Governor     )
of the Commonwealth of          )
Pennsylvania; ROBERT C.         )
JUBELIRER, President Pro        )
Tempore and Trustee ad litem    )
of the Senate of the            )
Commonwealth of Pennsylvania;   )
JOHN M. PERZEL, Speaker and     )
Trustee ad litem of the House   )
of Representatives of the       )
Commonwealth of Pennsylvania;   )
and THE PENNSYLVANIA GAMING     )
CONTROL BOARD,                  )
                                )
        Defendants.             )

O R D E R

        AND NOW, this **27** day of July, 2005, upon consideration of
defendant Commonwealth of Pennsylvania's motion to dismiss
[Document #8], IT IS HEREBY ORDERED that said motion is granted.

                                BY THE COURT:

                                _____, J.

cc:  All counsel of record

11