IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DEVELOPMENT )
GROUP II, L.P., a Limited )
Partnership, by SOUTH )
PITTSBURGH MANAGEMENT II, LLC, )
its General Partner; and )
PITTSBURGH PALISADES LLC, )
                                                                               )
    Plaintiffs, )
                                                                               )
                v. )          Civil Action No. 04-1258
                                                                               )
COMMONWEALTH OF PENNSYLVANIA; )
EDWARD G. RENDELL, Governor )
of the Commonwealth of )
Pennsylvania; ROBERT C. )
JUBELIRER, President Pro )
Tempore and Trustee ad litem )
of the Senate of the )
Commonwealth of Pennsylvania; )
JOHN M. PERZEL, Speaker and )
Trustee ad litem of the House )
of Representatives of the )
Commonwealth of Pennsylvania; )
and THE PENNSYLVANIA GAMING )
CONTROL BOARD, )
                                                                               )
    Defendants. )

M E M O R A N D U M

Gary L. Lancaster,
District Judge.                                                July 27, 2005

    This is an action challenging the constitutionality of the Pennsylvania Race Horse Development and Gaming Act ("the Act"), 4 Pa. C.S.A. § 1101 et seq. Plaintiffs allege that the Act contains several unconstitutional provisions specifically designed to exclude plaintiffs from participation in the gaming industry. Although the Act provides for the distribution of

fourteen licenses to operate slot machine facilities within the Commonwealth of Pennsylvania, plaintiffs claim that the Act contains language that was included solely to preclude plaintiffs from applying for and receiving one of those licenses.

Before the court is the Pennsylvania Gaming Control Board's motion to dismiss. For the reasons that follow, the motion will be granted.

I. BACKGROUND

Unless otherwise noted, the following facts are not in dispute.

Plaintiffs allege that, for a number of months prior to the Pennsylvania Legislature's passage of House Bill No. 2330 ("the Act," codified at 4 Pa. C.S.A. § 1101, et seq.), they had made publicly known their intention to develop a commercial, residential, thoroughbred horse racing and gaming facility to contain slot machines in the City of Pittsburgh. They have since acquired property within the city limits on which they intend to build and operate such a facility. Plaintiffs have an application for a thoroughbred racing license currently pending with the State Horse Racing Commission. To legally operate their planned facility, plaintiffs are required to secure a gaming license pursuant to the Act.

The Act provides for the issuance of fourteen (14) slot machine licenses, to meet the following requirements:

1) no more than seven (7) Category I licenses at licensed racetrack facilities;

2) no more than five (5) Category II licenses at slots-only parlors; and

3) no more than two (2) Category III licenses at resort hotels.

Plaintiffs plan to seek a Category I license.

At C.S.A. 4 §§ 1302 and 1308, the Act specifies a number of conditions which must be met before a party is eligible to apply for a slot machine license. Plaintiffs contend that these eligibility requirements were not enacted with the legitimate intent of permitting only qualified and ethical entities an opportunity to obtain gaming licenses. Rather, plaintiffs assert, the requirements are merely pretextual provisions aimed at preventing plaintiffs and plaintiffs only from obtaining a license to operate the facility they plan to build.

Plaintiffs take issue with three provisions of the Act. First, they claim that § 1302(b), the provision requiring that "racinos," (facilities operating both a horse racetrack and slot machines) be further than twenty (20) linear miles from one another is unconstitutional as applied to plaintiffs. They base this claim on the fact that the property they purchased to develop a racino is apparently less than twenty linear miles from

3

The Meadows, an existing racetrack in Washington, PA. Plaintiffs contend that the owners of The Meadows are eligible for, and will most likely receive, one of the seven racino licenses provided for by the Act. If and when that occurs, plaintiffs argue, plaintiffs will then be prohibited from obtaining a license.

Second, plaintiffs contend that § 1308(c) of the Act is unconstitutional as applied to them. That section reads:

> [n]otwithstanding any law to the contrary, the board and the commissions shall not consider any application for a license if the applicant or any person affiliated with or directly related to the applicant is a party in any ongoing civil proceeding in which the party is seeking to overturn or otherwise challenge a decision or order of the board of commissions, pertaining to the approval, denial, or conditioning of a license to conduct thoroughbred or harness horse race meetings respectively with pari-mutual wagering, or to operate slot machines.

4 Pa. C.S.A. § 1308(c). Plaintiffs claim that they are the only plaintiffs challenging the State Horse Racing Commission's grant of a thoroughbred racing license.

Third, plaintiffs allege that the status requirements in the Act are unconstitutional as applied to plaintiffs. The Act states that current owners and operators of both thoroughbred and harness horse racing facilities and previously approved applicants for both types of horse racing facilities are eligible to apply for a racino license. 4 Pa. C.S.A. § 1302(a). However, the only new applicants who may receive a racino license are those applying for a harness racing facility, not a thoroughbred racing facility. Id. Plaintiffs are current applicants for a

4

thoroughbred racing license, and argue that the Act unconstitutionally prohibits them from receiving the license.

Plaintiffs argue that these three provisions of the Act apply only to a small class of entities, mainly Plaintiffs, and as such violate the Equal Protection Clause of the United States Constitution, the United States Constitution's prohibition against Bills of Attainder, and the Pennsylvania Constitution's prohibition against Special Legislation. Plaintiffs seek injunctive relief.

II. <u>STANDARD OF REVIEW</u>

When the court considers a Rule 12(b)(6) motion to dismiss, the issue is not whether plaintiffs will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiffs, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. See <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994). In this regard, the court will not dismiss a claim merely because plaintiffs' factual allegations do not support the particular legal theory they advance. Rather, the court is under a duty to examine the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory. 5A Charles Alan Wright & Arthur R. Miller,

Federal Practice & Procedure § 1357 (2d ed. 1990). It is on this standard that the court has reviewed defendant's motion.

III. DISCUSSION

Defendant Pennsylvania Gaming Control Board ("Board") bases its motion to dismiss on several grounds, including an argument that plaintiffs do not have standing. Specifically, the Board asserts that plaintiffs' constitutional claims are dependent upon future events and are thus not ripe for adjudication. The court agrees, and grants the motion to dismiss on that basis.

Plaintiffs have filed an application for a thoroughbred horse racing license. The application is currently pending before the Board. If plaintiffs receive a thoroughbred horse racing license, the Act dictates that they would then be ineligible to apply for a gaming license, which they must attain if they wish to legally operate slot machines at their proposed facility. Plaintiffs assert that even if they were eligible for a gaming license, the Act's "twenty linear miles" requirement would render it impossible for the Board to grant gaming licenses to both plaintiffs and the Meadows Racetrack. Plaintiffs predict the Meadows Racetrack will apply for and receive a gaming license although as of the present time, neither plaintiffs nor the Meadows Racetrack have been granted or denied a gaming license.

6

The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), which itself "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded," Allen v. Wright, 468 U.S. 737, 750 (1984). It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," which means an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," Lujan, 504 U.S. at 560 (citations, footnote, and internal quotation marks omitted); (2) a causal relationship between the injury and the challenged conduct, which means that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41-42 (1976); and (3) a likelihood that the injury will be redressed by a favorable decision. Allen v. Wright, 468 U.S. at 752.

In light of these principles, we conclude that plaintiffs' claims are not ripe for adjudication at this juncture. If and when plaintiffs have completed the application processes and been denied the license(s) necessary to operate

their proposed facility, only at that point might they have standing to reinitiate an action against the Board. At this time, however, plaintiffs state no case or controversy that is ripe for the court's review. As such, the Board's motion to dismiss will be granted.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss filed by defendant Pennsylvania Gaming Control Board is GRANTED. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DEVELOPMENT )
GROUP II, L.P., a Limited )
Partnership, by SOUTH )
PITTSBURGH MANAGEMENT II, LLC, )
its General Partner; and )
PITTSBURGH PALISADES LLC, )
                              )
     Plaintiffs, )
                              )
           v. )    Civil Action No. 04-1258
                              )
COMMONWEALTH OF PENNSYLVANIA; )
EDWARD G. RENDELL, Governor )
of the Commonwealth of )
Pennsylvania; ROBERT C. )
JUBELIRER, President Pro )
Tempore and Trustee ad litem )
of the Senate of the )
Commonwealth of Pennsylvania; )
JOHN M. PERZEL, Speaker and )
Trustee ad litem of the House )
of Representatives of the )
Commonwealth of Pennsylvania; )
and THE PENNSYLVANIA GAMING )
CONTROL BOARD, )
                              )
     Defendants. )

O R D E R

AND NOW, this 27th day of July, 2005, upon consideration of defendant Pennsylvania Gaming Control Board's motion to dismiss [document #38], IT IS HEREBY ORDERED that said motion is granted and the Clerk of Court is ordered to mark this case CLOSED.

BY THE COURT:

_____, J.

cc: All counsel of record